UNITED STATES BANKRUPTCY COURT                    <u>FOR PUBLICATION</u>
SOUTHERN DISTRICT OF NEW YORK

---

In re

Barbara Giordano Leonaggeo

                                                    Chapter 12
                                                    Case No. 23-35092 (CGM)

                          Debtor.

---

### MEMORANDUM DECISION GRANTING CREDITORS' MOTION TO DISMISS

<u>A P P E A R A N C E S</u> :

*Counsel for the Debtor*
Cristo Law Group LLC
2 State Street
Rochester, NY 14614
By:    David H Ealy

*Counsel for M-M2 RE Holdings, 1 LLC and M-M2 RE Holdings, 13 LLC*
Stenger, Diamond & Glass, LLP
1139 Route 9
Wappinger Falls, NY 12590
By:    Mary K. Ephraim

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

   This matter came before the Court as M-M2 RE Holdings, 1 LLC ("Holdings 1") and M-M2 RE Holdings, 13 LLC ("Holdings 13") (collectively, "Creditors") filed a motion to dismiss or, in the alternative, motion for relief from stay.  Creditors move for dismissal arguing that Debtor is not eligible for chapter 12 relief as defined by sections 109(f) and 101(21) of the Bankruptcy Code.  *See* 11 U.S.C. §§ 109(f), 101(21).  Alternatively, Creditor moves for relief from the stay under section 362(d) of the Bankruptcy Code for lack of adequate protection,

*DRAFT*

arguing that there is no equity cushion because Debtor has inflated the value of her properties.

For the reasons set forth herein, the motion to dismiss granted.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

## BACKGROUND

Barbara Giordano-Leonaggeo (the "Debtor") filed a chapter 12 petition with this Court

on February 9, 2023.  Vol. Pet., ECF No. 1.  Debtor is a repeat filer.  Her last case, filed in 2022,

was dismissed because Debtor does not have regular income.  Mot. Dismiss, *In re Girodano-

Leonaggeo*, No. 22-35118 ECF No. 16.  Rather, her income is seasonal.  Debtor's two major

assets are her parcels of land: 150 Homan Road (the "Homestead") and 151 Homan Road (the

"Stable").  *See* Vol. Pet.

Debtor has several secured creditors, two of which jointly filed this motion to dismiss or,

in the alternative, motion for relief from stay.  Mot. to Dismiss, ECF No. 46.  M-M2 RE

Holdings, 1 LLC ("Holdings 1") and M-M2 RE Holdings, 13 LLC ("Holdings 13," collectively

"Creditors") hold two judgment liens in the amount of $171,394.15 and $87,250.80, respectively.

Mot. to Dismiss 3–4.  Creditors argue that Debtor is exploiting chapter 12 bankruptcy to gain the

benefit of the automatic stay, does not qualify for chapter 12 relief, and has failed to provide

documentation required by the Trustee.  *Id.* at 2.  Creditor also complains that property taxes are

accumulating on the properties and there is no disclosure that the properties are adequately

protected.  *Id.*  If the Court denies the motion to dismiss, the Creditors request the stay be lifted.

*Id.*

*DRAFT*

Creditors argue that Debtor has not been operating as a farm for at least 3 years. *Id.* at

13. In support, Creditors state that Debtor has not bred a horse in that time, her horse boarding

operation yields negligible income, and that she has no plans to harvest her cedar trees. *Id.* at 7.

Creditors also argue that Debtor's inability to recall how many inquiries she has received to

breed her stallion this year or the historical income from such activities is evidence that Debtor

does not operate a farm. *Id.*

Creditors argue that Debtor has inflated the value of her properties. *Id.* at 8–11. As to

the Homestead, Creditors state that their appraiser determined the value of the land, after the cost

to tear down the structure, is $136,000. *Id.* Ex. H. Debtor's valuation of the Homestead is

$800,000 in her schedules and offers a comparative market analysis in support. Schedules, ECF

No. 19. Creditors argue that the broker did not look at the Homestead and has compared it to

renovated homes. Mot. to Dismiss 10–11. Creditor characterizes the Homestead as "derelict."

*Id.* at 5.

As to the Stable, Creditors argue their appraisal for the property is $240,000, less costs of

$50,000 for repairs. *Id.* at 11, Ex. K. Creditor argues that Debtor's valuation of $431,381 was

inexplicably plucked from a comparative market analysis value range of $165,000 to $868,000.

Creditors doubt Debtor will be able to sell this property for the sum desired and speculate that

there is no way that a sale will be able to fund a chapter 12 plan. *Id.* at 11.

Debtor filed an affidavit in opposition to the motion to dismiss. Aff. of Debtor, ECF No.

56. Debtor states that her and her husband operate a horse farm and have been doing so for 50

years. *Id.* ¶ 6. Debtor states that her farming operations include training horses, appraising

horses, breeding horses, broodmare breed boarding, general boarding for horses, and rider

instruction. *Id.* ¶ 10. Debtor states that all of her income comes from the farm and that the farm

experiences the same inherent risks and cyclical uncertainties that are associated with farming. *Id.* ¶ 12. Debtor states she is subject to weather related issues and the whims and health and reproduction of horses. *Id.* Debtor also clarifies that there are no property taxes due at present and that they have a budgeted for future post-petition taxes. *Id.* Debtor's also requests that, should the Court determine Debtor is ineligible for chapter 12 relief, she be permitted instead to convert the case to Subchapter V. *Id.* ¶ 21.

Debtor's real estate agent, Gabriel Perez (the "Realtor") submitted an affidavit in opposition to the motion to dismiss. Aff. of Realtor, ECF No. 57. The Realtor is licensed in the State of New York and is affiliated with Century 21 Alliance Realty Group. *Id.* ¶ 1. The Realtor states that he has sold multiple properties in the area and based on his review he agreed upon an initial listing price of $525,000. *Id.* ¶ 3. The Realtor has physically inspected the property, "found the barn to be a very well built and sturdy structure in good condition," and attached pictures showing the same. *Id.* ¶ 4. The Realtor expects the property to sell for at least $450,000 within 6 months. *Id*. ¶ 5.

Debtor's attorney filed an declaration in opposition. Decl. of Atty, ECF No. 58. Debtor's attorney states that Debtor's last case was dismissed because Debtor did not have "regular income" due to the nature of her farming business. *Id.* ¶ 6. Debtor filed this case on an expedited basis in order to stay the foreclosure by Holdings 1. *Id.* ¶ 7. Debtor has complied with the code and filed all documentation requested by the Chapter 12 Trustee, including monthly operating reports. *Id.* ¶ 8. Those operating reports show net income. *Id.* Debtor has also filed a plan and has entered into a contract with a real estate broker to ensure the completion of that plan and should generate an excess of funds. *Id.* ¶ 9. Debtor's attorney states that the appraisal of the Homestead done by Creditors is old and of questionable validity—even the town assessor has

*DRAFT*

valued the home at $671,000, far more than the $210,000 Creditors claim it is worth. *Id.* ¶ 9.

Debtor's attorney also disputes the attorneys fees included in Creditors' claims as well as a

portion of the claims that are barred by the statute of limitations. *Id.* ¶ 11–13.

## DISCUSSION

Section 1208(c) provides, in relevant part:

> On request of a party in interest, and after notice and a hearing, the court may
> dismiss a case under this chapter for cause, including . . . unreasonable delay, or
> gross mismanagement, by the debtor that is prejudicial to creditors . . . [and]
> continuing loss to or diminution of the estate and absence of a reasonable
> likelihood of rehabilitation . . . ."

11 U.S.C. § 1208(c)(1), (9).

Section 1203 of the Bankruptcy Code directs the Chapter 12 Debtor-in-possession, to

perform all the duties, with some exception, of a trustee serving in a Chapter 11 case as set out in

Section 704.  11 U.S.C. §§ 704, 1203.  Section 704(8) requires the Debtor-in-possession to file

"periodic reports and summaries of the operation" of their business ("Operating Reports").

Courts have dismissed chapter 12 cases where Debtor refiled with substantially the same assets

and creditors as in a case dismissed just days before, where Debtor filed in response to a

foreclosure suit and had filed three cases within three years, and where no change had occurred

in the debtor's circumstances. *Matter of Kennedy*, 181 B.R. 418 (Bankr. D. Neb. 1995); *In re

Walton*, 116 B.R. 536 (Bankr. N. D. Ohio 1990).  Dismissal is also justified where Debtor

delayed in producing a feasible plan and a feasible plan was unrealistic based on the income and

expense projections.  *Novak v. DeRosa*, 934 F.2d 401, 404 (2d Cir. 1991).

Here, Debtor was indeed late in filing her operating report, however, she did file them

after the motion was brought.  There is no statute or case law that supports dismissal for cause

under these circumstances.

*DRAFT*

**Whether Debtor Qualifies for Chapter 12 Relief**

Creditors also moved to dismiss because they believe Debtor is not eligible for Chapter 12 relief under the meaning of Section 109(f). Section 109(f) provides, that "only a family farmer . . . with regular annual income may be a debtor under chapter 12 of this title." 11 U.S.C. § 109(f). Section 101(18) requires a "family farmer" to be "engaged in a farming operation." 11 U.S.C. § 101(18). Section 101(21) includes in the term "farming operation," "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state. 11 U.S.C. § 101(21).

Though there are few controlling standards under chapter 12, courts have looked to whether the debtor bears any of the inherent risks traditionally associated with farming. The Seventh Circuit has found that chapter 12 relief is specifically designed for those farmers whose activities involved the inherent risks and cyclical uncertainties that are associated with farming. *In re Hoel*, 617 B.R. 636, 638–639 (Bankr. W.D. Wis.) (*citing In re Armstrong*, 812 F.2d 1024, 1027 (7th Cir. 1987).

Only a handful of Courts have addressed this specific question, and their rulings are split. Courts in Illinois and Oklahoma found that horse breeding, boarding, and training was a service-oriented business, not one that produced agricultural goods for consumption like a traditional farm. *In re Cluck*, 101 B.R. 691 (Bankr. E.D. Okla. 1989); *In re McKillips*, 72 B.R. 565 (Bankr. N.D. Ill. 1987). These Courts found the Debtors to only be marginally affected by the uncontrollable conditions faced by traditional farmers, and that only a farm that bred, raised, and sold horses to maturity would constitute a farming operation. *Id.*

On the other hand, Courts in Texas and Tennessee found that Debtors horse business involved the traditional risks inherent in farming, but those Debtors were also involved in the

*DRAFT*

growing of feed and the raising of the horses to maturity to sell as livestock. *In re Buchanan*, No. 05-114, 2006 U.S. Dist. LEXIS 50968 (M.D. Tenn. July 25, 2006). Though the approaches of these courts differ, the common denominator is a review of the activities to compare them to the activities required to grow or produce crops or livestock, then assess the risk factors assumed by the Debtor. *Id.*

Here, Debtor boards horses, breeds her stallion, trains horses, appraises other people's horses, and provides seasonal instruction. None of these activities are similar to activities required to produce crops or livestock. The Debtor is largely providing a service similar to those in the *Cluck* and *McKillips* cases.

Debtor faces a predicament here—the previous case was dismissed because Debtor's business is seasonal, similar to a farm as defined under the code, but is ineligible for relief under the chapter suitable for farms. In light of this, Debtor has requested the Court allow her to convert her case to chapter 11 subchapter V.

**Whether the Debtor May Convert her Case to Subchapter V**

Under Section 1208(a), a debtor "may convert a case [under chapter 12] to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable" but is silent as to whether a debtor may convert a chapter 12 case to a case under chapter 11. 11 U.S.C. 1208(a).

In the Second Circuit, when the plain meaning of the statute fails to clarify ambiguity, Courts look to legislative history. *United States v. Jones*, 965 F.3d 190, 195 (2d Cir. 2020). While some Courts read the statute to be permissive, there is nothing in the legislative history suggesting that Congress intended for a chapter 12 debtor to convert to chapter 11. *See In re Orr*, 71 B.R. 639 (Bankr. E.D. N.C. 1987); *Matter of Bird*, 80 B.R. 861 (Bankr. W.D. Mich.

1987); *In re Johnson* 73 B.R. 107 (Bankr. S.D. Ohio 1987).  This Court declines to accept the permissive reading and finds that conversion from chapter 12 to chapter 11 subchapter V is not possible under section 1208 of the Bankruptcy Code.

Should this Debtor choose to refile under chapter 11, she should be cognizant that, due to the timing of the preceding filings, the automatic stay will not come into effect.  Section 362(C)(4)(A) provides:

> if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case.

11 U.S.C. § 362(C)(4)(A).

The statute is clear: because the Debtor in this case will have had two previous bankruptcies pending and dismissed within the year, the stay will not go into effect automatically upon the filing of a chapter 11 subchapter V case.

Though the matter at hand does not concern confirmation, the Court notes that Debtor's chapter 12 plan provided for a lump sum payment to be made at the end of an 18-month period. This lump sum payment was to come from the sale of the Stable and was intended to fund the bulk of the plan.  Reliance on this speculative lump sum payment may present a feasibility issue if the Court were to consider confirming such a chapter 12 plan.  Section 1225 of the Bankruptcy code allows confirmation if the court, among other factors, finds that "the debtor will be able to make all payments under the plan and to comply with the plan."  11 U.S.C. § 1225(a)(6). "Feasibility, which depends on a determination of the reasonable probability of payment, is fundamentally a fact question."  *In re Tate*, 217 B.R. 518, 50 (Bankr. E.D. Tex. 1997) (*citing In re Crowley*, 85 B.R. 76, 78–79 (W.D. Wis. 1988).

*DRAFT*

In circumstances such as this, especially where the value of the property to be sold is heavily debated and unsubstantiated, it would be hard for this Court to find the probability of payment to be reasonable.

## <u>CONCLUSION</u>

For the foregoing reasons, Creditors' motion to dismiss is granted. The Creditors shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**
_____
**Dated: May 24, 2023**                   **Hon. Cecelia G. Morris**
**Poughkeepsie, New York**          **U.S. Bankruptcy Judge**